**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **AALIYAH KIZEART**, on behalf of herself and others similarly situated, | ) ) ) | Case No. 3:23-cv-00515-NJR |
| | ) | Hon. Nancy J. Rosenstengel |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| **PEABODY GATEWAY NORTH MINING, LLC.,** | ) ) ) | |
| Defendant. | ) ) | |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

Representative Plaintiff Aaliyah Kizeart ("Representative Plaintiff"), on behalf of herself and the Class Members (as defined in below), and Defendant Peabody Gateway Services, LLC (incorrectly named in this lawsuit as Peabody Gateway North Mining, LLC)[1] ("Defendant") respectfully move this Court to enter an Order preliminarily approving the Parties' class action settlement under Fed. R. Civ. P 23(e) ("Settlement").

In support of this Motion, Representative Plaintiff and Defendant (the "Parties") submit the following documents:

**Exhibit 1**:    Class Action Settlement Agreement and Release (the "Agreement");

**Exhibit 2**:    Declaration of Class Counsel Hans A. Nilges ("Nilges Dec."); and,

**Exhibit 3**:    Proposed Order Granting Preliminary Rule 23 Settlement Approval.

As part of its preliminary approval, the Parties further request that the Court:

A.  Designate Representative Plaintiff as the Class Representative;

---

[1] *See* Answer, ECF No. 19 at Page ID #45.

i

B.  Provisionally certify the proposed settlement class;

C.  Preliminarily approve the Representative Plaintiff's request for a service award;

D.  Designate Representative Plaintiffs' Counsel as Class Counsel;

E.  Preliminarily approve Class Counsel's request for attorneys' fees and costs;

F.  Direct distribution of the proposed notice of class action settlement to the Class Members as outlined in the Agreement; and,

G.  Schedule a Fairness Hearing to take place approximately <u>100 days</u> after granting preliminary approval of the Parties' class action settlement.

Following the Fairness Hearing, the Parties will request that the Court grant final approval of the Settlement by entering the proposed Final Order and Judgment Entry that will be attached to the Parties' Joint Motion for Final Approval of Class Action Settlement.

As discussed in the Memorandum in Support below, the Settlement was reached during arms-length negotiations between the Parties and their experienced Counsel with the assistance of a third party-neutral. The Parties and their Counsel agree that the Settlement is fair, reasonable, and adequate and in the best interest of the Representative Plaintiff and the Class Members.

Respectfully submitted,

/s/ Hans A. Nilges
Hans A. Nilges (OH 0076017)
Shannon M. Draher (OH 74304)
**NILGES DRAHER LLC**
7034 Braucher Street, NW, Suite B
North Canton, OH  44720
Telephone: 330-470-4428
Facsimile: 330-754-1430
Email:  hans@ohlaborlaw.com
        sdraher@ohlaborlaw.com


Robert P. Kondras, Jr. (18038-84)
**HASSLER KONDRAS MILLER LLP**
100 Cherry St
Terre Haute, IN 47807
Telephone:    812-232-9691
Facsimile:    812-234-2881
Email:        kondras@hkmlawfirm.com


*Class Counsel*

/s/ Scott D. Meyers (with permission)
Kaytlin E. Kopen (IL 6319305)
Scott D. Meyers (IL 6322708)
Cooper R. Page (71113MO)
**HUSCH BLACKWELL LLP**
8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
Telephone: 314-480-1500
Facsimile: 314-480-1505
Email:  scott.meyers@huschblackwell.com
        Kayt.kopen@huschblackwell.com
        Cooper.page@huschblackwell.com

*Counsel for Defendant*

<u>**MEMORANDUM IN SUPPORT**</u>

I.     **BACKGROUND**

    **A.  Factual and Procedural Background.**

On February 16, 2023, Representative Plaintiff filed the instant lawsuit (the "Action") alleging that the policies and practices of Defendant violated the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"). ECF No. 1. Specifically, Representative Plaintiff alleged that Defendant did not pay its underground coal mining employees for certain pre-shift and post-shift work, including, but not limited to, donning and doffing safety clothing and other protective equipment and gathering and returning other work tools and equipment. *See* ECF No. 1. Defendant filed an Answer denying any wrongdoing. ECF No. 19. Defendant continues to deny all material allegations asserted in the Action and has raised several affirmative defenses.

To avoid the burden, expense, risks and uncertainty of litigation, the Parties agreed to engage in good faith, arm's-length settlement discussions, including mediation. On December 5, 2023, the Parties engaged in private mediation with Mediator Frank Neuner. Although the Parties did not reach an agreement at the mediation, they ultimately reached an agreement on January 5, 2024. The terms of the Settlement are reflected in the Agreement. (Nilges Dec. at ¶ 9)

Prior to mediation, the Parties' Counsel thoroughly researched, and debated, the basis for Representative Plaintiff's claims and Defendant's defenses. The research included, among other things, an analysis of the Representative Plaintiff's and the Class Members' time and payroll data, as well as the applicable legal authority. Class Counsel retained Dr. Robert Moulder, who is a PhD level data scientist, to analyze the wage and hour data provided by the Defendant and create a damages model. The model included the following toggles, the manipulation of which changed

damages calculations in real time: average wage; estimated unpaid pre- and post-shift minutes; liquidated damages; and Illinois 5% damages. Plaintiff's damages model was shared with the mediator and Defendant's Counsel. Counsel also specifically discussed the model. Therefore, the damages model factored in the Parties' respective risk of loss on their various claims and defenses. (*Id.* at ¶ 10).

### B.  Summary of the Settlement.

The Settlement includes the Class Members identified in Exhibit A of the Agreement, which consists of all of Defendant's hourly employees who were engaged in underground coal mining during the period of February 1, 2020, to September 27, 2023, and who worked more than 40 hours in at least one workweek during that period. (Agreement at ¶¶10, 13).

The terms of Agreement include: the total settlement amount to be paid by Defendant; the form, content, and method of distribution of the proposed notice to the Class Members; the time period that Class Members have to opt out or object to the Settlement; the calculation of individual payments to eligible recipients; the process for distributing individual payments; the proposed service award to the Representative Plaintiff; and the proposed distribution of reasonable attorneys' fees and costs to Class Counsel. (Nilges Dec. at ¶ 11).

The total settlement amount of $350,000.00 includes all individual settlement payments to Class Members that do not opt-out of the Settlement, Representative Plaintiff's service award, Class Counsel's attorneys' fees and litigation costs, and the settlement administration costs. The total settlement amount does not include Defendant's share of applicable employer tax withholdings, which Defendant agrees to pay outside of the fund and as directed by the settlement administrator. (Agreement at ¶14).

The Agreement provides that the individual settlement payments will be calculated proportionally based on the number of workweeks worked by each Class Member during the

period of February 1, 2020, to September 27, 2023, in comparison to the total number of workweeks worked by all Class Members during that same period. In exchange for the total settlement payment, the Class Members that do not opt-out of the Settlement (the "Claimants") will release their wage and hour claims against Defendant through the Effective Date of the Agreement, as that term is defined in the Agreement. (Agreement at ¶¶ 8, 10, 13, 23).

The Agreement provides for the payment of a service award in the amount of $5,000.00 to Aaliyah Kizeart for her services in this Action and in exchange for her additional general release. (Agreement at ¶ 52; Nilges Dec. at ¶ 32). The Agreement also provides for the payment of attorneys' fees to Class Counsel in the amount of one-third (1/3) of the total settlement amount and for Class Counsel's out-of-pocket litigation expenses. (Agreement at ¶ 29; Nilges Dec. at ¶ 30).

Assuming the Court grants preliminary approval of the Settlement, the Parties will retain a settlement administrator – Analytics Consulting LLC – to issue notice of class action settlement to the Class Members. The notice will be issued by first class mail to each Class Member's last known address. If a notice is returned as undeliverable, the settlement administrator will promptly attempt to locate such Class Member through other reasonable and legally acceptable means and attempt to reissue the returned notice. Class Members will have 45 days to object or opt out of the settlement. (Agreement at ¶¶ 21, 38-40).

## C. Class Counsel's approach to settlement.

Class Counsel performed an extensive risk analysis, which accounted for various biases and the compounding nature of risk probabilities. This risk analysis is based on well-established behavioral science as applied to legal decision making as well as calculating the mathematical expected value. (*Id*. at ¶ 12). Following is a description of Class Counsel's risk analysis approach to settlement.

3

Legal scholarship discussing the application of behavioral science to settlement decisions has observed that it is often the case that "both plaintiffs and defendants frequently reject settlement proposals that would have been financially advantageous." (*Id*. at ¶ 13, citing Eyal Zamir et al., *The Oxford Handbook on Behavioral Economics and the Law*, §24, 623 (1st ed. 2014). Likewise, many cases settle for an inappropriate amount. *Id*.

To avoid making poor settlement decisions, Class Counsel has adopted a systematic approach to analyzing settlements that is grounded in empirical research and designed to achieve the maximum value of a lawsuit that considers all outstanding risks. This approach is specifically designed to avoid various decision-making biases that could result in the rejection of a favorable settlement or result in one that is disadvantageous to their clients. (Nilges Dec. at ¶ 14).

One such bias is the "subadditivity effect," which is the tendency of people to judge the probabilities of the whole to be less than the probabilities of the parts. For example, in one study, attorneys were asked to calculate the probability of being awarded four different ranges of damages. The collective probabilities summed to 170%. (*Id*. at ¶15). Similarly, from Class Counsel's own personal experience and in speaking with colleagues, attorneys often conclude that a case with an estimated 50% chance of winning each of three different issues in the litigation is a "50/50" case. But it is not. Rather, there is only a 12.5% chance when the probabilities of all three issues are compounded (*i.e.*, 0.5 * 0.5 * .5 = 0.125). (*Id*. at ¶ 16).

Other biases include the self-serving bias, which causes litigants to overestimate the chances that an objective third party (i.e., the Court or a jury) will favor their perspective. Overoptimism and overconfidence biases also tend to result in poor predictions. (*Id*. at ¶ 17). These cognitive biases and errors affect all individuals to some degree. They are particularly unhelpful in analyzing the reasonableness of a settlement. To mitigate these biases, Class Counsel performs

an Expected Value ("EV") calculation for nearly all cases, which can be generalized as the anticipated value of a case at some point in the future after various uncertain events have occurred. (*Id*. at ¶ 18).

The EV calculation is done by Class Counsel prior to mediation. Essentially, the EV is calculated by summing the product of the probabilities of winning at each stage of the litigation and the potential outcome of success (i.e., $E(X) = 1/n \sum_i^n x_i P(X = x_i)$). The EV is the weighted average of all the estimated values at the various decision points. Given variability in individual attorney estimates, a range of possible reasonable settlements is identified by calculating the population's standard deviation (i.e., $SD(X) = \sqrt{\sum_i (x_i - E[X])^2 P(X = x_i)/n - 1}$), which provides the variability of possible settlements. Class Counsel also determined the standard error (i.e., $SE = \sigma/\sqrt{n}$), which is the variability in expected values across multiple samples of a population. A "critical value" of 2.575 is then used to determine the range of all possible expected values within a 99% confidence level. (*Id*. at ¶ 19).

Following is basically the way the process works, without the mathematical notation and in the plainest English possible. An EV is simply a weighted average of all the possible outcomes. A simple example of a weighted average is a grade point average, or GPA, which considers all a student's grades weighted by the number of credit hours for each course and divided by the total number of courses. The GPA is generally considered a useful tool to estimate how well a student is understanding the material and how well the student may perform in the future. (*Id*. at ¶ 20).

Similarly, in the settlement context, the EV allows Class Counsel to look at a single number that considers the win and loss potential of all the various material decisions that the Court will have to make as the litigation proceeds. This is important, because, as discussed above, the human

mind easily makes mistakes when trying to consider multiple probabilities simultaneously. (*Id.* at ¶ 21).

A single EV, however, represents only what that attorney believes the collective win and loss probabilities are. Of course, attorneys will disagree about the possibility of winning or losing various Court rulings. Accordingly, the range of possible settlements—from the lowest to the highest settlement amount—that a reasonable attorney might accept must be considered. This range is the standard deviation. The standard deviation results in a wide range, so it may not be the best guide. This is why Class Counsel takes the further step of calculating the standard error. (*Id.* at ¶ 22).

If Class Counsel was able to interview every attorney with the relevant wage and hour experience and have them provide their win and loss estimates for each potential decision the Court needs to make, Class Counsel would be able to calculate the "true" EV. That would be the best number possible. Unfortunately, that is not practical if not impossible. (*Id.* at ¶ 23).

So, Class Counsel needs to do the best they can by interviewing a sample of attorneys with relevant experience. They then calculate the average amount that those attorneys would settle a case for. The problem is that every sample that is less than the total population will not result in the "true" EV. The plus or minus amount that the EV is wrong is the standard error. Once the standard error is determined, Class Counsel can then add and subtract that number from the EV and determine the range of possible "true" expected values. (*Id.* at ¶ 24).

The final step is to determine how confident Class Counsel wants to be that they have captured the "true" expected value within our range. This is where Class Counsel selects the "critical value," which is the number of standard errors. For example, if Class Counsel used only one standard error, they would only be 68.27% confident that the "true" expected value is within

6

the calculated range. If Class Counsel used 1.95 standard errors, they would be 95% confident that the "true" expected value is within their calculated range. Here, however, Class Counsel used 2.575 standard errors, which provides them with a 99% confidence level that the "true" expected value is within their calculated range. (*Id*. at ¶ 30).

By using the 2.575 "critical value" Class Counsel can say within a reasonable degree of statistical certainty that they are 99% confident that the "true" expected value is within their calculated range. That is, any settlement within that range may represent the "true" EV, which, of course, can only be known with absolute certainty by interviewing every single wage and hour lawyer. Accordingly, it is Class Counsel's belief that any settlement within the range of possible "true" expected values is reasonable. (*Id*. at ¶ 26).

The EV of a case is calculated and visualized by Class Counsel using the decision tree software TreeAge Pro©. A decision tree is created with various Decision and Chance (i.e., probability) nodes at each stage of the case where there is a win/loss potential. At the end of each "branch" in the tree is a Payoff node, which is the sum of the probabilities times damages for the branch. The probabilities and values of the entire case are then summed, resulting in a final EV. (*Id*. at ¶ 27).

Class Counsel represents that multiple Decision nodes were identified, each with corresponding Chance and Payoff nodes, such as: (1) class or individual treatment; (2) meal break offset; (3) results of summary judgment; and (4) results of a jury trial. Considerations also included "high," "mid," and "low" win rates. (*Id*. at ¶ 28).

In this calculation, Class Counsel analyzed each potential risk of loss (*i.e.*, whether class treatment was obtainable, meal-break offset, summary judgment, and potential jury awards) and assigned a probability value to each potential risk. The decision tree software compounded each

7

of these probability values and applied those values to the damages model. This exercise allowed Class Counsel to fully appreciate (and visualize) the entire risk picture of this case. (*Id*. at ¶ 29).

Importantly, each Decision node reflects a future point in time, where Representative Plaintiff cannot reach without going through months, and possibly years, of litigation and potential appeals, including thousands of dollars of discovery and substantial expenditure of time. Discovery would include written discovery, document production, and depositions. (*Id*. at ¶ 30).

As further discussed below, the total settlement amount is within the range of expected outcomes. This determination is based on the opinions of experienced counsel familiar with the facts of the case and the law, who provided win/loss percentages at each decision node. These opinions were obtained prior to the mediation. A separate expected value was calculated for each responding attorney. (*Id*. at ¶ 31).

Here, the expected values of each attorney varied significantly (the standard deviation was $208,610.69 and the standard error was $104,305.35), which illustrates why it is necessary to also calculate the range of possible reasonable settlement outcomes and the range of possible "true" expected values. Here, the possible "true" expected values using a 2.575 critical value range from $300,037.71 to $838,253.29. (*Id*. at ¶ 32). Based on this, Class Counsel can determine with a 99% level of confidence that the $350,000.00 settlement amount is within the range of possible "true" expected values. The settlement is also above undersigned lead counsel's individual EV. Thus, it is Class Counsel's belief that the settlement is fair, reasonable, adequate, and in the best interests of the Class. (*Id*. at ¶ 33).

Additionally, the Class Members are receiving meaningful settlement payments. The settlement amount represents approximately an additional 8.18 minutes per day (i.e., 40.9 minutes per week assuming the typical 5-day work week) of pay for donning and doffing time at an

overtime rate. Before deductions for fees and costs and a service payment, this represents an average award to each class member of over $2,100. (*Id*. at ¶ 34).

Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Defendant is fair and reasonable and is in the best interest of the Class Members considering all known facts and circumstances, including the risks of significant delay and defenses asserted by Defendant. Likewise, Defendant's Counsel is of the opinion that the settlement is fair and reasonable, and in the best interest of Defendant considering the allegations, the uncertainty and costs of litigation, and the strain of litigation on business operations. (*Id*. at ¶ 35).

## II.   THE COURT SHOULD PROVISIONALLY CERTIFY THE PROPOSED SETTLEMENT CLASS AND PRELIMINARILY APPROVE THE SETTLEMENT.

The procedure for review of a proposed class action settlement is a three-step process. First, the court issues an order preliminarily approving the settlement. Second, the notice of the proposed settlement must be sent to all class members. Third, the court issues a final approval order after the distribution of notice and after the convening of a fairness hearing. *See Stewart v. Marshall Etc.*, Case No. 14-CV-1002-NJR-PMF, 2015 U.S. Dist. LEXIS 114581, at *3-4 (S.D. Ill. Aug. 28, 2015). At this stage, the "Court need only determine whether the settlement is 'within the range of possible approval.'" *Id.* at *4 (citing *Gautreax v. Pierce*, 690 F.2d 616, 621, n. 3 (7th Cir. 1982). For the reasons discussed below, the Court should issue an Order preliminarily approving the Settlement.

### A.   Provisional certification of the proposed settlement class under Rule 23(a) and Rule 23(b)(3) is warranted.

The Parties request that the proposed settlement class be certified under Rule 23. Rule 23 certification is appropriate here because the proposed settlement class meets Rule 23(a)'s

requirements of numerosity, commonality, typicality, and adequacy of representation. *See id.* at *5-9 (discussing Rule 23(a) requirements).

Certification is also appropriate under Rule 23(b)(3). Rule 23(b)(3) allows for certification "where the requirements of Rule 23(a) have been met, and where the Court finds that 'questions of law or fact common to members of the class predominate over any questions affecting only individual members' and that a' class action is superior to other available methods for resolving the controversy.'" *Id.* at, *9 (citing Fed. R. Civ. P. 23(b)(3)).

The proposed settlement class meets the numerosity requirements of Rule 23(a)(1). Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all persons is "impracticable." Fed. R. Civ. P. 23(a)(1). The proposed settlement class includes 285 individuals. As this Court explained, numerosity is typically satisfied when there are more than 40 class members. *See id.* at * 5-6.

The proposed settlement class meets the commonality requirement of Rule 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis¸* 963 F.2d 1013, 1018 (7th Cir. 1992)(citing *Franklin v. City of Chicago*, 102 F.R.D. 944, 949-950 (N.D. Ill. 1984)). "Common nuclei of operative fact" are present here because the Representative Plaintiff and the proposed settlement class worked for Defendant, held the same or similar job positions (*i.e.*, underground coal miner), were subject to the same timekeeping and pay policies, and were allegedly not paid for certain pre-shift and post-shift work. *See Stewart*, 2015 U.S. Dist. LEXIS 114581, at * 7.

The proposed settlement class meets the typicality requirement of Rule 23(a)(3). Commonality and typicality are often interrelated because a plaintiff's claim is typical to the class members' claims if it "arises from the same events or practice or course of conduct that gives rise

to the claims" of the class members, and the plaintiff's claims are also based on the same legal theory. *Id.* at * 7; *see also Rosario*, 963 F.2d at 1018. As discussed above, the claims asserted in this case present common questions of law and fact.

The adequacy of representation requirement under Rule 23(a)(4) is met. This requirement is two-fold and requires that Representative Plaintiff's Counsel (or Class Counsel) be adequate, and that Representative Plaintiff be an adequate Class Representative. *See Stewart*, 2015 U.S. Dist. LEXIS 114581, at * 8. Representative Plaintiff's Counsel has extensive experience in litigating class and collective actions for unpaid overtime. (Nilges Dec. at ¶¶ 3-7). Moreover, Representative Plaintiff claims are not antagonistic to, or in conflict with, the proposed settlement class member's claims. *See Stewart*, 2015 U.S. Dist. LEXIS 114581, at * 8.

Finally, the requirements of Rule 23(b)(3) are met. As discussed above, the Representative Plaintiff's claims and the proposed settlement class members' claims arise from the same facts and legal theories. A class action is the superior method to adjudicate these claims, especially considering the proposed settlement class is being certified for settlement purposes. *Id.*

**B.    The proposed notice of class action settlement satisfies Rule 23 and Due Process.**

Pursuant to Rule 23(c)(2)(B), a class action notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified by reasonable efforts. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims; issues or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgement on class members under Rule 23(c)(3).

11

Fed. R. Civ. P. 23(c)(2)(B). The proposed notice of class action settlement satisfies these requirements. *See* Agreement, Exhibit B. It contains the case name and number, a description of the claims and relief available, the name and contact information for Class Counsel, the procedure for objecting or opting out of the settlement, and the binding effect of the class judgment. *See id.; see also Stewart*, 2015 U.S. Dist. LEXIS 114581.

The proposed notice of class action settlement and the proposed plan for its distribution also satisfies Due Process. Due process is satisfied by sending written notice to the proposed settlement class members by first-class mail at the addresses shown in Defendant's business records. *See, e.g., Hughes v. Merit Lincoln Park LLC*, No. 08-CV-6191, 2011 U.S. Dist. LEXIS 139231, at *8 (N.D. Ill. Dec. 5, 2011) (citing, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75, 94 S. Ct. 2140, 2144 (1974) ("First class mail will generally satisfy Rule 23(c)(2)'s requirement of 'the best notice practicable under the circumstances.'")). In this case, the proposed notice of class action settlement will be sent to the Class Members by first-class mail using the addresses shown in Defendant's records. (Agreement at ¶¶34-38). Accordingly, the proposed notice satisfies Rule 23 and due process requirements.

## C.    The proposed settlement is within the range of possible approval.

As this Court explained, the following factors should be considered when deciding whether to grant preliminary approval of a class action settlement: "(1) the strength of the plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *Stewart*, 2015 U.S. Dist. LEXIS 114581, at * 11. In deciding whether to grant

preliminary approval, the Court "is entitled to rely heavily on the opinion of competent counsel." *Armstrong v. Board of School Directors*, 616 F.2d 305, 325 (7th Cir. 1980).

The Parties' Counsel, who have substantial experience in litigating class and collective actions for unpaid overtime, believe that the Settlement is fair and reasonable. This case was settled after both Parties' Counsel thoroughly researched and debated their respective legal positions, and after the production of informal discovery by Defendant, which was analyzed by the Parties' Counsel and used to build the Parties' respective damages models. Had this case not settled, the Parties would have undoubtedly engaged in extensive and costly discovery and motion practice. The Settlement represents a fair and adequate compromise to Representative Plaintiff's and the proposed settlement class members' claims without risk and expense of extended litigation. (Nilges Dec. at ¶¶ 3-7, 10, 12-36).

Class Counsel calculated potential damages using a damages model that was shared in mediation. The model included toggles, by which the following parameters could be adjusted which calculated estimated damages in real-time: average wage; estimated unpaid pre- and post-shift minutes; liquidated damages; and Illinois 5% damages. Plaintiff's damages model was shared with the mediator and Defendant's Counsel, and therefore, factored in the Parties' respective risk of loss on their various claims and defenses. (*Id.* at ¶ 10).

As outlined above, Class Counsel calculated the range of possible expected values with a 99% confidence level for this case. Additional details of that process are discussed in subsections 1-5, below. Class Counsel collaborated and provided blind estimates of their respective subjective predictions for the probabilities of the following nodes: (1) whether the case could proceed on a class basis; (2) whether purportedly paid lunch periods would completely offset overtime damages, if any; (3) whether Representative Plaintiff would survive a motion for summary judgment; (4)

13

whether Representative Plaintiff would prevail at trial; and (5-7) probabilities of a jury awarding high, middle, or low damages. (*Id.* at ¶¶ 28-40).

### 1.    Whether the case could proceed on a class basis.

Class Counsel assessed risk as to whether Representative Plaintiff could proceed on a class basis. If Representative Plaintiff were able to proceed on a class basis, then the Parties would engage in classwide discovery that would have included depositions, written discovery, and document production. Discovery may have shown that Representative Plaintiff could not proceed on a class basis. Class Counsel represents that the EV model incorporates an estimated value for Representative Plaintiff proceeding individually using estimated damages from the model, should Representative Plaintiff lose at this node. (*Id.* at ¶ 36).

### 2.    Whether purported paid meal breaks offset unpaid overtime.

The next issue that would be subject to substantial and heated debate would be whether certain payments made where a meal break was missed would offset any unpaid overtime arising from the claims for unpaid work time. Accordingly, this too was evaluated as its own risk of loss. This issue is particularly notable. Winning or losing this issue alone may have been effectively dispositive, as damages would have been severely impacted. (*Id*. at ¶ 37).

### 3.    Whether Representative Plaintiff would survive summary judgment.

Class Counsel assigned a probability on the risk that Representative Plaintiff might not survive summary judgment. If she had not, the calculated value of the case would essentially be zero dollars. Again, this would require substantial merits discovery. (*Id.* at ¶ 38).

#### 4.   Whether Representative Plaintiff would prevail at trial.

Should Plaintiff survive summary judgment, the next probability node examines whether Representative Plaintiff would prove liability at trial, which again might result in a case value of zero dollars if she lost. (*Id*. at ¶ 39).

#### 5.   Amount awarded by the jury.

And finally, even if the case proceeded on a class basis and Representative Plaintiff survived summary judgment and liability was established at trial, a yet-to-be-identified jury would need to find credible the presented testimony and evidence of how much unpaid overtime compensation Defendant should pay. This is reflected in various class terminal ends of the EV as "high," "mid," and "low," representing the respective possible jury awards depending on which range of damages Representative Plaintiff could prove, each having its own respective risk of loss. (*Id*. at ¶ 40).

Here, the settlement amount is within the range of possible "true" expected values. Courts have routinely found settlements fair and reasonable where there is a genuine dispute of fact regarding whether the employer violated applicable wage and hour laws, and the settlement amount is within the range of possible expected values. For example, Judge Posner writing for a Seventh Circuit panel concluded that an EV is the proper method for determining the fairness of a class settlement: "A settlement is fair to the plaintiffs in a substantive sense…if it gives them the expected value of their claim if it went to trial…." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987)(explaining an EV calculation where a settlement of $7 million would be justified even where theoretical damages not accounting for compounded risk of loss could be up to $1 billion). *See also*, *Siddiky v. Union Square Hosp. Grp*., 2017 U.S. Dist. LEXIS 75301, at *16 (S.D.N.Y. May 17, 2017); *Anderson v. Torrington Co*., 755 F. Supp. 834,

15

838 (N.D. Ind. 1991); *Chase v. Viaquest Residential Servs.*, S.D. Ohio No. 22-cv-1974, 2023 U.S. Dist. LEXIS 41416, at \*3-4 (Mar. 10, 2023); *Cheikh Fassa, ex rel. Himself & Others Similarly Situated v. Express Inc.*, S.D. Ohio No. 2:21-c:22-cv-v-542, 2022 U.S. Dist. LEXIS 73599, at \*4 (Apr. 5, 2022); *Johnson v. Centor, Inc.*, No. 5:19-cv-2622, 2021 U.S. Dist. LEXIS 213003, at \*3 (N.D. Ohio Nov. 4, 2021).

This settlement is certainly within the range of approval for the reasons discussed above. Accordingly, preliminary approval is justified here.

### D.    The proposed attorneys' fee award is fair and reasonable.

The Agreement provides for a standard one-third (1/3) share of the total settlement amount to be paid as attorneys' fees to Class Counsel, as well as approximately $8,288.23 to be paid to Class Counsel for litigation expenses. (Agreement at ¶28; Nilges Dec. at ¶ 41). The Court need not make a final ruling on attorneys' fees and costs until the final approval hearing, at which point any objections will be known.  The proposed allocation, however, should be preliminarily approved by the Court.  The requested fee is fair and reasonable because, *inter alia*, Representative Plaintiff signed a retainer agreement providing for a one-third contingency payment. (Nilges Dec. at ¶ 41)**.**

Courts generally favor an award of fees from a common fund, as called for by the proposed settlement in this case.  As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole Jurisdiction over the fund involved in the litigation allows a Court to prevent inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)(citations omitted).

16

When awarding fees from a common fund, the Seventh Circuit has directed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *26 (S.D. Ill. Dec. 13, 2018)*, quoting In re Synthroid Mktg. Litig*, 264 F.3d 712, 718 (7th Cir. 2001). A one-third contingency fee arrangement is a common arrangement for wage and hour class and collective actions. *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 CIV. 3571, 2017 U.S. Dist. LEXIS 73816, at *9; 2016 WL 5109196, at *4 (N.D. Ill. Sept. 16, 2016). For this reason, "district courts in the Seventh Circuit typically award 1/3 of the common fund in attorneys fees." *Young v. Rolling in the Dough, Inc.*, No. 1:17-CV-07825, 2020 WL 969616, at *6; 2020 U.S. Dist. LEXIS 35941, at *15-16 (N.D. Ill. Feb. 27, 2020)(awarding the requested 1/3 of the common fund in IWPCA case, as well as $17,035 in litigation and settlement administration costs), citing *Zolkos v. Scriptfleet, Inc.*, 2015 WL 4275540, *3, 2015 U.S. Dist. LEXIS 91699, at *7 (N.D. Ill. July 13, 2015) (approving 1/3 of total common fund).

Awarding one-third from the total settlement recognizes the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees. Unlike traditional firms that receive hourly fees on a regular, recurring basis, employment counsel who take cases on contingency cases often spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts, transcripts, travel, etc.), without receiving any payment for their work. Sometimes fees and expenses are recovered; other times, despite hundreds of hours of work, nothing is recovered. This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees. Courts have long recognized this reality. *See, e.g.,*

*In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 724 F. Supp. 160, 168 (S.D.N.Y. 1989)("Contingent fee arrangements implicitly recognize the risk factor in litigation and that the winning cases must help pay for the losing ones if a lawyer who represents impecunious plaintiffs, or those plaintiffs not so fully committed as to put their own money where their mouth is, will remain solvent and available to serve the public interest.").

The inability of plaintiffs to afford hourly fees is especially common in the employment context, where many workers are low wage earners and cannot pay several hundred dollars per hour for legal representation.  Contingency fee arrangements make it possible for plaintiffs' firms to "serve the public interest" by taking on class actions that deter wage law violations by employers.  *Skirchak v. Dynamics Research Corp.*, 432 F. Supp. 2d 175, 178–79 (D. Mass. 2006)(Lasker, J.), *citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).  "Allowing private attorneys to prosecute such actions in the aggregate effectively ensures enforcement of the wage laws by motivating employers to comply or face potentially large-scale litigation, and by providing counsel with an incentive to pursue such claims." *Skirchak*, 432 F. Supp. 2d at 179.

Based on these considerations, the Parties agree that a one-third award is fair and reasonable and ask that it be preliminarily approved by the Court.

**E.     The proposed service award to Representative Plaintiff is fair and reasonable.**

The Agreement provides for a service award to Representative Plaintiff in the amount of $5,000.00. The proposed service award is intended to compensate Representative Plaintiff for her effort and the risk associated with her role in initiating this lawsuit that has resulted in substantial recovery for the Class Members. (Agreement at ¶ 30). Representative Plaintiff contributed significant time, effort, and detailed factual information enabling Class Counsel

18

to evaluate the strength of the asserted claims, and reach a settlement of this matter that, in Class Counsel's opinion, fairly and adequately compensates the class for alleged unpaid wages. Representative Plaintiff was available for the entire mediation and throughout settlement negotiations. (Nilges Dec. at ¶ 43). As such, the time and effort that Representative Plaintiff provided supports the requested service payments.

Courts widely recognize that service award payments serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class action settlements. "Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny." *Furman v. At Home Stores, LLC*, No. 1:16-CV-08190, 2017 U.S. Dist. LEXIS 73816, at *5 (N.D. Ill, May 1, 2017); *Koszyk*, 2016 WL 5109196, at *2; 2016 U.S. Dist. LEXIS 126893, at *4 (N.D. Ill. Sept. 16, 2016), citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it necessary to induce an individual to participate in the suit.").

Here, Representative Plaintiff "filed this case at great risk" to herself, "provided valuable insight to [her] Counsel throughout the case," and her "efforts resulted in substantial payments to members of the class. *Young*¸ 2020 U.S. Dist. LEXIS 35941, at *172020 WL 969616 (awarding $10,000 service award to representative plaintiff). Accordingly, Representative Plaintiff's request for a service award in the amount of $5,000.00 should be preliminarily approved.

## **CONCLUSION**

For the foregoing reasons, the Parties respectfully request that the Court:

A.  Enter an Order preliminarily approving the Parties' Settlement;

B.  Designate Representative Plaintiff as the Class Representative;

C.  Provisionally certify the proposed settlement class;

D.  Preliminarily approve the Representative Plaintiff's request for a service award;

E.  Designate Representative Class Counsel as Class Counsel;

F.  Preliminarily approve Class Counsel's request for attorneys' fees and costs;

G.  Direct distribution of the proposed notice of class action settlement to the Class Members as outlined in the Agreement; and,

H.  Schedule a Fairness Hearing to take place approximately <u>100 days</u> after granting preliminary approval of the Parties' class action settlement.

Respectfully submitted,

<table>
<tr>
<td>

<u>/s/ Hans A. Nilges</u>
Hans A. Nilges (OH 0076017)
Shannon M. Draher (OH 74304)
**NILGES DRAHER LLC**
7034 Braucher Street, NW, Suite B
North Canton, OH  44720
Telephone: 330-470-4428
Facsimile: 330-754-1430
Email: hans@ohlaborlaw.com
          sdraher@ohlaborlaw.com

Robert P. Kondras, Jr. (18038-84)
**HASSLER KONDRAS MILLER LLP**
100 Cherry St
Terre Haute, IN 47807
Telephone:    812-232-9691
Facsimile:    812-234-2881
Email:          kondras@hkmlawfirm.com

*Class Counsel*

</td>
<td>

<u>/s/ *Scott D. Meyers (with permission)*</u>
Kaytlin E. Kopen (IL 6319305)
Scott D. Meyers (IL 6322708)
Cooper R. Page (71113MO)
**HUSCH BLACKWELL LLP**
8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
Telephone: 314-480-1500
Facsimile: 314-480-1505
Email:  scott.meyers@huschblackwell.com
          Kayt.kopen@huschblackwell.com
          Cooper.page@huschblackwell.com

*Counsel for Defendant*

</td>
</tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2024, the foregoing was filed electronically. Notice of this filing will be sent to the following individuals by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Hans A. Nilges*
*Class Counsel*